WILLIAM RILEY ET AL.

V.

THE PEOPLE OF THE STATE OF ILLINOIS.

*Criminal Law—Riot—Dispute as to Boundary Line—Removal of Fence—Evidence.*

The paramount owner of land having a present right of immediate possession may enter the same though occupied by another, and by himself or his servants remove a fence wrongfully erected thereon; and the persons who remove the same will not be guilty of riot unless they act in a violent and tumultuous manner against the person or property of the trespasser.

[Opinion filed September 21, 1888.]

APPEAL from the County Court of Greene County; the Hon. L. LARKIN, Judge, presiding.

In this case the appellants, William Riley and Timothy Sullivan, with others, were indicted by the grand jury for riot at the September term, 1887, of the Greene County Circuit Court, and on certificate, a trial was had at the December term, 1887, of the County Court, resulting in the conviction of the defendants, William Riley and Timothy Sullivan, on the first count in the indictment, and fines of $50 imposed upon each of them, from which judgment they prosecute appeal to this court. The other defendants were discharged.

The first count in the indictment charges that on the 23d day of April, 1887, the said Riley and others unlawfully, with force and violence, did break and deface a certain fence, etc., the property of Conner Carmody, against the wish and will of Conner Carmody, etc. The second count charged that the fence was broken unlawfully and in a riotous and tumultuous manner, etc. As the conviction is upon the first count, the main question in this case is, Was the act of William Riley and Timothy Sullivan an unlawful act, done with the force and violence contemplated in the statute defining a riot? A brief statement of the principal facts in the order of their

occurrence will show, we think, that the acts of the accused were not only lawful but entirely proper under all the circumstances.

In 1857 William R. Davis conveyed to the Jacksonville and Carrollton Railroad Co. a piece of land 1,221 feet long by 250 feet in width, at Carrollton, Illinois, for depot and right-of-way purposes, lying near the center of section 23; 125 feet of the strip being in the N. E. ¼ and 125 feet in the N. W. ¼ of section 23, the center line of the section north and south being the center line through the strip north and south, along which the main track of the railroad was laid over twenty years ago. William R. Davis then owned a small farm lying on the east of the depot grounds, and prior to 1866 he constructed a rail fence on the line between his farm and the depot grounds. Davis repaired the fence on same line, and after his death Conner Carmody came into possession of the farm and also repaired the same fence, and for over twenty years the "Davis fence," so-called, has been the line dividing the farm now owned by Carmody from the depot grounds. During all this time these grounds have been under the control of the railroad company, and have been leased by the company at various times for lumber yards, tile factory, etc., and in 18— the C. & A. Railroad Company leased all the east half of the grounds to L. S. Bushnell, who had the actual possession of the same as such tenant in March and April, 1887, at the time of the occurrences hereafter mentioned. On the lower part of this strip was a tile factory building, and grounds inclosed on the east by the old "Davis fence," and on the west by a fence put up by the tile factory company, and in this inclosure a spur from the railroad track was run, and Bushnell had cordwood and other property therein. In March, 1887, Conner Carmody had White, County Surveyor, make a survey, and by virtue of this survey he made claim to a portion of Bushnell's inclosure, and against the objections and protest of Bushnell, commenced to take it within his pasture, and in doing so tore down and hauled away the lower end of the old Davis fence, and entered upon the railroad grounds leased to Bushnell, and then put up a slat

and wire fence, taking into his pasture a strip twelve to fifteen feet in width, and moved Bushnell's cordwood to make way for his fence. Carmody had full notice that this ground was claimed by the railroad company and he was forbidden by Bushnell, lessee, and by the officers of the company from trespassing upon it. In defiance of all this he forcibly entered and put up the fence which he claims was unlawfully broken on the 23d day of April, 1887. William Riley, general roadmaster of the C. & A. R. R. Co., acting under the orders of C. H. Chappell, general manager of said company, with other employes under him, came to Carrollton with lumber and material to build a fence upon the line of the old Davis fence, and in a peaceful manner cut Carmody's wire fence in sections, moved all the material of it into Carmody's pasture and were proceeding to put up a fence on the old line where the Davis fence had stood, when he and his workmen were arrested on complaint of Carmody. There was no riotous or tumultuous conduct, and no violence was used toward Carmody.

The obstruction placed by Carmody was simply removed in a peaceable manner.

Mr. HENRY C. WITHERS, for appellants.

The C. & A. R. R. Co. and its tenant, Bushnell, had the lawful right to regain possession in a peaceable manner, and this is all that was done by Riley and his workmen. Ill. & St. L. R. R. & Coal Co. v. Cobb, 94 Ill. 57; Sattler v. The People, 59 Ill. 68; Reeder v. Purdy, 41 Ill. 285; Fort Dearborn Lodge v. Klein, 115 Ill. 191.

There was no evidence on the part of the people of any riotous or tumultuous conduct, nor proof of any unlawful act. An unlawful act must be done to constitute a riot. Dougherty v. The People, 4 Scam. 179; Legg v. The People, 92 Ill. 598.

The County Court erred in allowing evidence in regard to the survey of J. C. White.

The railroad company and its predecessors had held continuous and peaceable possession of the ground on which Car-

mody put his fence for over twenty years, and the survey of
J. C. White, in March, 1887, could not change the boundary
lines so long established. Besides this, the White survey is
shown by his testimony to be uncertain and unreliable. Title
of lands can not be determined by criminal prosecution. The
admission of this testimony prejudiced the jury and misled
them as to the issue. The plat made by J. C. White for
Conner Carmody was not a "record of survey" and should
have been excluded. This survey was made twenty years
after Davis had built his rail fence on the line and it is clear
that it was improperly admitted in evidence in this case.
Kyle v. Town of Logan, 87 Ill. 66.

Mr. DAVID F. KING, for appellees.

CONGER, J.   The evidence shows that the railroad company
was in the peaceable possession of the strip of ground in con-
troversy prior to the time that Carmody entered and built his
fence.

Carmody having invaded the possession of the company
and erected his fence upon the land in their possession, the
principal question arising upon the record is, could the appel-
lants as servants of the company enter in the manner they did
and remove such fence without being guilty of a riot.

The first count of the indictment charges that the said Riley
and others *unlawfully*, with *force and violence*, did break
and deface the fence, etc.; while the second charges that the
fence was broken unlawfully, and in a riotous and tumultuous
manner, etc.

In Fort Dearborn Lodge v. Klein, 115 Ill. 191, it is said :
"It is clear, then, from the very words of the statute, that
the paramount owner of a tract of land, having a present right
of immediate possession, may enter the same in a peaceable
manner, though occupied by another, and he will not, by reason
of such entry, become a trespasser."

. The word, "entry," occurring in the statute, is used in its
appropriate legal sense, as signifying that remedy which the
common law gives to the paramount owner of real property

to redress, without legal process, the injury which he sustains when wrongfully deprived of the possession thereof by one having no right thereto.

The appellants having a legal right to enter, were not guilty of committing an unlawful act, and could not be guilty of the offense charged in the indictment, unless in removing the fence, as they lawfully might, they acted in a violent and tumultuous manner against the person or property of Carmody. We think the evidence entirely fails to show that they thus acted.

Carmody says: " On Saturday, when Riley came with the men, I was sitting on my porch, and when I went down to where they were at work, they were digging post holes where the old Davis fence had stood. I had them arrested and started this prosecution. The railroad men were very quiet. There was no loud talking and no disturbance."

The evidence entirely failed to sustain the indictment and a new trial should have been awarded. The judgment of the County Court will be reversed and the cause remanded.

*Reversed and remanded.*